## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| ROBERT HOPPLE,<br>STEFANI RUDIGIER, and<br>SHAWN MESEY,<br>on behalf of themselves and all others<br>similarly situated,<br><br>         Plaintiffs,<br><br>      v.<br><br>ST. FRANCOIS COUNTY, MISSOURI,<br>ADVANCED CORRECTIONAL<br>HEALTHCARE, INC., SHERIFF DANIEL<br>BULLOCK in his official capacity, JAIL<br>ADMINISTRATOR DENNIS SMITH in<br>his official capacity, and HEATHER<br>SMITH, LPN in her individual and<br>her official capacities,<br><br>         Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.: 4:20-cv-1838<br><br>JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

1.    Pretrial detainees at the St. Francois County Jail endure extreme temperatures; hunger; inconsistent and inadequate provision of medical, dental, and mental health care; unsafe and unsanitary conditions; overcrowding; and a culture of fear created by frequent violence and retaliation by deputies at the jail. These conditions, which have been exposed and brought before St. Francois County officials repeatedly over years by detainees, in media reports, and through litigation, violate basic standards of human decency as well as the United States Constitution.

2.    The pretrial detainees have not been convicted of any crime and are presumed innocent until proven guilty. Because pretrial detainees have not been convicted, they cannot be punished or subjected to conditions that amount to cruel and unusual punishment either. Pretrial

detainee jail conditions that amount to punishment of any kind are unconstitutional as they violate the detainees' due process rights.

3.      Defendants St. Francois County, Advanced Correctional Healthcare, Inc., Sheriff Dan Bullock, Jail Administrator Dennis Smith, and Nurse Heather Smith systematically and knowingly (1) denied the minimal necessities to individuals confined at the Jail by subjecting them to appalling and inhumane conditions; (2) were deliberately indifferent to the medical, mental health, and dental needs of individuals confined at the St. Francois County jail; and (3) discriminated against and failed to accommodate people with disabilities.

4.      Defendants were deliberately indifferent to the substantial risk of pain and suffering and harm to detainees, including serious injury, clinical deterioration, and death, caused by their inadequate, unlawful, and unconstitutional policies, practices, and customs.

5.      Defendants have been aware of the chronic and systemic problems at the St. Francois County Jail and their causes for years and failed to take the actions or commit the resources necessary to ameliorate the unconstitutional and illegal conditions.

6.      Plaintiffs, by and through their attorneys, and on behalf of those similarly situated, bring this civil action pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution. Plaintiffs seek in this civil action the vindication of their fundamental rights, a declaration that the Defendants' conduct was unlawful, and compensation for the conditions they endured at the St. Francois County Jail.

## JURISDICTION AND VENUE

7.      This is a civil rights action arising under 42 U.S.C. § 1983; 28 U.S.C. § 2201, *et seq*., the Fourteenth Amendment to the United States Constitution, the Americans with Disabilities

2

Amendments Act (ADAA), 42 U.S.C. §12101 *et seq*., and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

8.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

9.      Jurisdiction supporting Plaintiffs' claim for attorney's fees and costs is conferred by 42 U.S.C. § 1988.

10.     Venue is proper under 28 U.S.C. § 1391(b) because all the events alleged herein occurred within the State of Missouri and all of the parties were residents of the State at the time of the events giving rise to this litigation.

11.     Divisional venue is proper in the Eastern Division because a substantial part of the events leading to the claims for relief arose in the St. Francois County, Missouri, and Plaintiffs and Defendants resided in the Eastern Division at all times relevant to this complaint. E.D. Mo. L.R. 2.07(A)(1), (B)(1).

12.     Plaintiff demands a trial by jury pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

13.     Plaintiff Robert Hopple is a 49-year-old resident of Bonne Terre, St. Francois County, Missouri. Mr. Hopple was a pretrial detainee in the St. Francois County Jail from May 4, 2018 to on or around October 23, 2018. During this period, Mr. Hopple was subjected to various unconstitutional conditions as described herein.

14.     Plaintiff Stefani Rudigier is a 27-year-old resident of Maplewood, St. Louis County, Missouri. Upon information and belief, Ms. Rudigier was a pretrial detainee at the St. Francois County Jail from on or about March 5, 2017 to on or about March 3, 2019. During this period, Ms. Rudigier was subjected to various unconstitutional conditions as described herein.

15.     Plaintiff Shawn Mesey is a 31-year-old resident of Jefferson City, Cole County, Missouri. Mr. Mesey was a pretrial detainee at the St. Francois County Jail from on or about October 19, 2017 to on or about September 13, 2018; on or about July 30, 2018 to on or about August 4, 2018; October 30 to October 31, 2018; and on or about April 11, 2019 to on or about May 2, 2019. During these periods, Mr. Mesey was subjected to various unconstitutional conditions as described herein.

16.     Defendant St. Francois County is a political subdivision of the State of Missouri and is a person for the purposes of a 42 U.S.C. § 1983 action for damages. Defendant County operates and manages the St. Francois County Jail and was, at all relevant times mentioned herein, responsible for the actions, inactions, policies, procedures, practices, and customs of the St. Francois County Sheriff's Office and its respective employees and/or agents. The County was responsible for providing a constitutional level of medical care for those in its custody, including funding, oversight, and corrective action to ensure adequate conditions.

17.     Defendant Advanced Correctional Health Care, Inc. (ACH) is an Illinois corporation that regularly conducts business in the State of Missouri. Upon information and belief, since at least 2017, St. Francois County contracted with ACH to provide medical services at its jail.

18.     Defendant Dan Bullock was at all times relevant herein the Sheriff of St. Francois County with the responsibility for operating and maintaining the St. Francois County Jail. Upon information and belief, Dan Bullock is a resident and citizen of the State of Missouri, was at all times relevant acting under the color of state law and acting in his capacity as the Sheriff for St. Francois County, and was acting in the course and scope of his employment for St. Francois County. At all times relevant to the subject matter of this litigation, Defendant Bullock was

4

responsible for training and supervising all deputies and staff at the St. Francois County Jail, for setting the policies, practices, procedures and customs at the jail, and ensuring the health and welfare of all persons detained at the jail.

19.     Defendant Dennis Smith was the Jail Administrator at the St. Francois County Jail from on or around June 1, 2003 to December 31, 2019. Upon information and belief, Defendant Smith is a resident and citizen of the State of Missouri. At all times relevant to this action, Defendant Smith acted under the color of state law in his capacity as the Jail Administrator for St. Francois County and acted in the course and scope of his employment for St. Francois County. As Jail Administrator, Dennis Smith was responsible for managing the day-to-day operations and executing policies, procedures, and practices as well as overseeing the customs at the St. Francois County Jail.

20.     Defendant Heather Smith is and was, at all times relevant herein, a St. Francois County employee working as a Licensed Practical Nurse (LPN) at the jail. Upon information and belief, Heather Smith is resident and citizen of the State of Missouri, was at all times relevant acting under the color of state law in her capacity as the LPN for the jail, and was acting in the course and scope of her employment for St. Francois County. In her role at the jail, Heather Smith was responsible for ensuring detainees received adequate medical care. Heather Smith is sued in both her individual and official capacities.

## FACTUAL ALLEGATIONS

I.   **INDIVIDUAL PLAINTIFFS' ALLEGATIONS**

**Robert Hopple**

21.     Robert Hopple was placed in a small holding cell immediately after his booking in May 2018. Mr. Hopple shared the cell with up to ten other men for roughly three days. Jail staff

gave him a torn up, urine-soaked mat that was approximately a quarter of an inch thick with most of the stuffing missing and a thin blanket. The overcrowded conditions in the cell meant Mr. Hopple had to sleep on the floor underneath the cell's only bunk. The other men slept standing up or on the floor with their heads next to the toilet. It was unbearably hot and the air was stagnant in the holding cell. Mr. Hopple and others requested that the deputies turn on the ventilation. The deputies either laughed at or completely ignored their requests.

22.     Upon being transferred to the general population, Mr. Hopple was still unable to shower for two weeks until he received a hygiene pack containing hygiene essentials such as bar soap, toothpaste, toothbrush, and deodorant from jail deputies. Even after receiving the hygiene pack, Mr. Hopple was unable to appropriately shower because the water in the showers was scalding hot. Mr. Hopple and other male detainees requested the deputies address the scalding hot water in the showers. In response, the jail deputies made the water so cold it was impossible to shower or bathe. Mr. Hopple was unable to adequately bathe or shower for the entirety of his detention in the St. Francois County Jail.

23.     The unsanitary conditions at the jail further complicated Mr. Hopple's ability to maintain adequate hygiene. Mr. Hopple saw thick black mold and slime on the walls and floors of the showers. The toilets would regularly overflow, and there was a lingering smell of sewage. During the last few weeks of Mr. Hopple's detention in October 2018, the temperature outside dropped to below freezing, however, deputies refused to turn the heat on because they felt it was too early in the year to do so.  It was so cold inside the facility that the sewage from Mr. Hopple's backed-up toilet froze on the ground in his cell. He could see his breath and the water from his cell faucet would freeze. Mr. Hopple and the other detainees would wear socks on their hands and rock back and forth in order to stay warm.

24.     The St. Francois County Jail also failed to provide adequate food to detainees. Mr. Hopple received tiny portions of bland food which consisted primarily of starches, such as bread, that was often moldy or discolored. Hot food was barely warm when Mr. Hopple received it. Although the servings were so small, additional servings were almost never given, even when requested. Sometimes, the deputies would bring four or five additional meal packs and offer them to the approximately seventy male detainees on the condition that they correctly answer a trivia question. If the question was answered incorrectly, the deputies would throw the food away. Mr. Hopple resorted to eating toothpaste and toilet paper to curb his hunger.

25.     Mr. Hopple experienced and witnessed deputy cruelty throughout his detention. One practice, called "Friday Night Fights," took place when deputies assigned to the weekend and overnight shifts arranged fights between detainees.

26.     Another practice involved deputies singling out individuals with disabilities for abuse. Mr. Hopple recalls one situation where the deputies signaled the detainees to exit their cells by switching the lights on and off. One of Mr. Hopple's fellow detainees was blind and could not understand the deputy's instructions to exit his cell. When the individual did not follow the order, deputies entered the man's cell and maced him. The deputies used so much mace on the individual that he and the other detainees in the surrounding cells had trouble breathing.

27.     Deputies had a practice of subjecting detainees with certain charges to calculated assaults by other detainees. A few months into his detention, a deputy transferred Mr. Hopple to another cell where two other detainees began hitting and kicking his head and face. Mr. Hopple tried to protect himself by putting his arms in front of his face. The assault continued for approximately ten minutes until the same deputy returned and escorted Mr. Hopple back to his

previous pod and put him on lockdown. Mr. Hopple knew he was targeted because of his charges and knew other people with those charges treated similarly.

28.     Mr. Hopple was bloodied and bruised after the assault and his front teeth were broken. Mr. Hopple informed jail nurse Heather Smith that he was in pain and believed he needed to see a doctor. Ms. Smith refused to provide Mr. Hopple with any medication to alleviate the pain. For three days, Mr. Hopple remained in extreme and obvious amounts of pain, crying out for assistance. Jail staff ignored Mr. Hopple's cries. Eventually, the pain became so unbearable and he was so desperate for relief that Mr. Hopple pulled out his own tooth. Mr. Hopple again requested some pain medication from Ms. Smith and she denied his request.

29.     In order to receive any healthcare, Mr. Hopple and other detainees were required to either directly request medical care from the nurse or via a medical request form. Any written request for medical care cost money, even if medical services were not rendered. There was one emergency call button in the common area for detainees to request immediate medical assistance. There were no emergency call buttons in the individual cells and, if detainees were locked down, the only way they could request emergency medical attention was by banging on the doors and walls to get the deputies' or nurse's attention.

30.     In June 2018, Mr. Hopple witnessed a detainee attempt suicide. The detainee had a rash on his back when he arrived at the jail; however, Ms. Smith refused to do an assessment or provide the man any medical treatment. After three days of detention, the man tore the thin blanket he was provided into strips and tied them together to make a rope. The man walked out into the communal area with the makeshift rope around his neck, tied a knot around the railing, and Mr. Hopple saw the detainee jump over the railing, attempting to hang himself. Mr. Hopple ran to the emergency call button and frantically pressed it to request emergency assistance from the deputies.

The deputies responded by telling Mr. Hopple not to press the emergency call button. Meanwhile, other detainees tried to untie the man who was hanging from the railing but eventually the makeshift rope broke and the man fell approximately ten feet to the floor. Mr. Hopple continued to press the call button and the deputies eventually responded by asking what Mr. Hopple needed and he told them there was a man hanging himself. Approximately seven to eight minutes later, two deputies entered the pod and, prior to providing any medical attention to the man, made all the other detainees go into lockdown in their cells. The man laid on the ground for another three to four minutes before the one deputy wheeled in the restraint chair, placed the unresponsive man in it, and wheeled him out of the pod. One of the deputies returned to the common area to untie the makeshift rope and began making fun of the man who just tried to commit suicide by acting as if he was choking himself and saying how "dumb the guy was" because he could not "tie a knot well enough to hang himself." Mr. Hopple never saw the detainee again after the incident.

31.     In July 2018, Mr. Hopple witnessed a man who complained of chest pains while his extremities were turning purple. The other detainees pressed the emergency call button but deputies did not respond. After approximately eight to ten minutes, one of the deputies arrived at the pod with a wheelchair. The deputy did not check on the man but, instead, made Mr. Hopple and others place the man in a wheelchair. The same deputy wheeled him out of the dorm and the man was never seen again.

32.     As a result of his detention, Mr. Hopple missed his father's funeral and his daughter's birthday. The trauma associated with being detained at the St. Francois County Jail caused Mr. Hopple to experience increased depression and anxiety to the point he would not leave his home for several months upon his release. Mr. Hopple continues to experience depression and anxiety.

9

**Stefani Rudigier**

33.     Plaintiff Stefani Rudigier shared her medical history with the St. Francois County Jail booking employee upon her entry in March 2017. She informed them that she had a mental illness that required routine, prescribed medication. A jail employee then escorted her to a holding cell where Ms. Rudigier did not receive her medication for the approximately three to four days while in that cell.

34.     The holding cell was small, filthy, and hot and the women were not able to shower. There was one bed and one sink for the five women housed there. In fact, they found it difficult for their bodies not to touch each other.

35.     Upon transfer to the female pod, Ms. Rudigier found the conditions to be much the same. At one point during her detention, the toilet in Ms. Rudigier's cell backed up and was inoperable. It took several days for the jail to fix the issue. Meanwhile, Ms. Rudigier and her cellmates would cover the toilet to deal with the smell of sewage.

36.     Like Mr. Hopple, Ms. Rudigier was not able to adequately bathe during her entire time at the St. Francois County Jail because of the extreme shower water temperatures. The detainees found that water was either so cold it would cause shock or it was so hot that it would burn their skin. Ms. Rudigier recalls the shower water being so hot that other detainees would use it to cook their noodles.

37.     During her detention, the St. Francois County Jail staff failed to meet Ms. Rudigier's and other women's basic sanitary needs and failed to provide feminine hygiene products. For Ms. Rudigier, the failure to provide those items meant she was forced to bleed on herself and her clothes during her monthly menstrual cycle.

38.     St. Francois County also failed to meet basic caloric and nutritional guidelines with its meals. Ms. Rudigier lost 110 pounds during her detention due to the inadequacy of the meals. In addition to being unfresh, the meal portions were tiny and additional servings were very rare. On one occasion, Ms. Rudigier scrubbed the moldy walls and showers in her pod for three consecutive days just to earn extra food during one evening's dinner.

39.     Her cell was both unsanitary and cold. Ms. Rudigier's cell was located in a corner of the pod where the temperature was so cold that Ms. Rudigier could preserve the milk she received during breakfast by sitting it in front of the cell door. Although she and her cellmate requested additional blankets, they were refused because their cell was not located on the back wall.

40.     In addition to basic sanitation, dietary, and hygiene needs, the St. Francois County Jail also failed to provide adequate health care to detainees like Ms. Rudigier. She learned that there were two ways to request medical care: using a medical request slip or by seeking out jail nurse Heather Smith. Either way, Ms. Rudigier learned she would be charged a fee for each individual medical request she submitted, regardless of whether she actually received any care. Ms. Rudigier, knowing she would not be able to pay the charge, still made several requests for medical care because she needed help.

41.     Ms. Rudigier also learned to be fearful of making requests directly to Ms. Smith. Ms. Rudigier had been warned and witnessed Ms. Smith mistreating people who requested medical attention. At times, the people seeking help were placed in a holding cell for surveillance instead of receiving medical assistance.

42.     Ms. Rudigier was provided inadequate medical care while detained at the St. Francois County Jail. For example, despite telling the booking officer and Ms. Smith about her

need for psychotropic medication, Ms. Rudigier was denied medication for her mental illness for 21 of her nearly 24 months of pretrial detention. In November 2018, nearly 21 months into her detention, Ms. Rudigier finally received medication for her mental illness. At no time did Ms. Rudigier see or speak with a physician or mental health professional prior to receiving that prescription.

43.     Without her medication, Ms. Rudigier experienced acute mental health symptoms and frequently found herself in tears. Ms. Rudigier's requests to the jail nurse were largely ignored. Jail deputies observed a number of her mental health crises. Ms. Rudigier would cry, hyperventilate, and beg for help but they too ignored her requests.

44.     Similarly, Ms. Rudigier received inadequate care for other medical needs. In March 2018, Ms. Rudigier began experiencing severe abdominal pain and unusual vaginal discharge. She requested medical assistance from Ms. Smith, who provided Ms. Rudigier an antibiotic for symptoms consistent with a yeast infection. Ms. Rudigier's symptoms persisted through the course of antibiotics. A month later, Ms. Rudigier requested additional assistance from Ms. Smith and received a seven-day course of a different antibiotic. The second course of antibiotics did not alleviate Ms. Rudigier's symptoms and Ms. Rudigier's pain and discharge continued for several months.

45.     Five months later, after continued complaints from Ms. Rudigier about the vaginal discharge, odor, and discomfort, Ms. Smith prescribed another course of antibiotics. Still the antibiotics did not work and Ms. Rudigier told Ms. Smith that she was experiencing abdominal pain.

46.     Ms. Rudigier feared there could be something wrong with her bladder and kidneys and shared that concern with the jail nurse as well. Ms. Rudigier requested a medical evaluation

12

and gave Ms. Smith a urine sample. The nurse did not share the test results with Ms. Rudigier but immediately gave her a fourth round of antibiotics. After seven to ten days, the medication failed to work and Ms. Smith extended Ms. Rudigier's prescription for another three days.

47.     Ms. Rudigier's pain and discomfort continued and, in January 2019, she received yet a fifth round of antibiotics from Ms. Smith. After months of pain, discomfort, and switching between powerful antibiotics with their own side effects, Ms. Rudigier gave up hope that she would get help to alleviate the pain and treat the discharge.

48.     Ms. Rudigier left the St. Francois County Jail two months after Ms. Smith prescribed the last antibiotic to her. When Ms. Rudigier was finally able to see a physician, outside of the jail, she was diagnosed with a gallbladder issue that required emergency medical surgery.

49.     Ms. Rudigier was diagnosed with Post Traumatic Stress Disorder in June 2019, months after leaving the cruel, inhumane, and punishing conditions of her pretrial detention at the St. Francois County Jail.

**Shawn Mesey**

50.     Plaintiff Shawn Mesey was born with a mobility impairment that causes substantial limitations in his daily living activities. Without the support of his specialized shoes, Mr. Mesey struggles to walk without stumbling and experiences  constant pain, stiffness, and limited motion in his legs.

51.     Mr. Mesey's impairment requires the use of specialized shoes and equipment to walk, an accommodation that he communicated to the jail deputies during each of his St. Francois County Jail bookings. Each and every time that Mr. Mesey requested an accommodation, it was denied by deputies.

52.     As a result, Mr. Mesey struggled to walk, climb stairs, or bathe without pain while detained at the St. Francois County Jail.

53.     At one point in time, Jail Administrator Dennis Smith told Mr. Mesey that he would not receive his orthopedic shoes because, at the St. Francois County Jail, "we don't do that." As a result, for the entirety of each of Mr. Mesey's detentions, he was denied specialized, medical footwear needed to accommodate his disability.

54.     In October 2017, after a brief intake assessment, jail deputies took Mr. Mesey to the small holding cell. The cell was filthy and overcrowded. There was one bunk and one sink for the ten to twelve men housed in the cell on any given day. Mr. Mesey was given a dirty blanket and mattress to use to sleep on the floor.

55.     When Mr. Mesey and his fellow detainees requested showers, deputies would mace the men or put them in the restraint chair and beat them. For the twenty days Mr. Mesey was in the holding cell, he was not provided an opportunity to shower.

56.     The holding cell was in serious disrepair; there was mold, the cell was filthy, and the window was broken out. When the weather was cold, wind and snow would blow into the holding cell and the cell was so cold, Mr. Mesey and other detainees called it the "ice cell."

57.     Eventually, Mr. Mesey moved from the holding cell to the general population where he was designated a pod "trustee" who would assist in maintaining order in the pods and to communicate between detainees and jail staff. As a trustee, Mr. Mesey made several complaints to the deputies regarding the water temperatures in the showers. Most of the time, the showers were so hot that the water would scald Mr. Mesey's skin and he would have to use three to four cups filled with cold water from the sink to mix with the water from the shower and make rinsing bearable. When Mr. Mesey reported the extreme temperatures to jail staff, including the jail

administrator Dennis Smith, the deputies told him that the boiler was messed up and that an outside contractor would have to fix it.

58.     On several occasions, Mr. Mesey witnessed retaliation against detainees who complained about the shower temperatures or were not agreeable to the jail deputies. In response to shower complaints, the deputies would turn off the water completely or remove the hot water to make the shower water freezing cold. Mr. Mesey recalls being without hot water in the shower two to three weeks at a time on multiple occasions.

59.     The threat of deputy-detainee violence was omnipresent. Mr. Mesey witnessed deputies hit or punch detainees and the deputies would often brag about how they used the jail's restraint chair. The deputies told detainees that screaming, getting too loud, or talking back while in the chair would lead to them being sprayed with mace. The deputy torture also included spraying restrained detainees in the mouth with mace and punching them in the head.

60.     Like Mr. Hopple and Ms. Rudigier, Mr. Mesey also received inadequate medical care during his detention at the St. Francois County Jail. A doctor diagnosed Mr. Mesey with anxiety and depression prior to his detention in October 2017 and prescribed Mr. Mesey with Effexor to use in the morning and Trazadone to use at night to treat his symptoms. Like Ms. Ruidiger, Mr. Mesey told the jail booking employee, deputies, and Ms. Smith about his illness and medication needs. It took two weeks before the jail staff provided Mr. Mesey with his Effexor; Mr. Mesey was still not receiving his Trazadone. Mr. Mesey told Ms. Smith that he was not receiving all of his prescribed medication but she made no effort to assist him. The jail withheld Mr. Mesey's Trazadone for the entirety of his detention.

61.     Mr. Mesey developed a toothache that required medical attention during his detention between December 2017 and January 2018. He reported the health care need to Ms.

Smith. In response, Ms. Smith gave Mr. Mesey a medical request slip and told him that submitting the form would cost him money. In great pain and need of medical attention, Mr. Mesey filled out and returned the form. Ms. Smith approached Mr. Mesey the following day and, without any assessment or evaluation of his tooth, demanded that he gargle salt water. The ache remained so Mr. Mesey requested a pain reliever from Ms. Smith. She refused his request, demanding Mr. Mesey buy it from the canteen instead. Mr. Mesey did not have commissary funds so he was unable to purchase pain medication.  For the remaining six months he was detained, Mr. Mesey endured severe tooth pain which limited his ability to eat or sleep.

62.     Mr. Mesey began receiving adequate health care only when he was transferred to the custody of the Missouri Department of Corrections (DOC) in June 2018. At that point in time, Mr. Mesey's tooth was so seriously decayed it had to be extracted. As a result of his experiences at the St. Francois County Jail, Mr. Mesey was diagnosed with Post Traumatic Stress Disorder. His anxiety and depression have also increased significantly.

II.     **BACKGROUND**

63.     Defendant St. Francois County owns and operates the St. Francois County Jail located at 1550 Doubet Road in Farmington, Missouri.

64.     In or around 1996, the County purchased a building that used to be a dairy farm and added the west side sally port, holding cells, showers, pods, kitchen, recreation room, special housing units, solitary confinement and protective custody cells to the original dairy structure.

65.     The west side of the building contains the sally port, the booking desk and eight units (R1-R8), which are used for holding detainees for less than twenty-four hours, detainees brought to county on *habeas* writs, detainees serving weekend sentences, and detainees who have

16

medical needs. Each R1-R8 cell is approximately eight by ten feet, contains one bed, one faucet, and one toilet and houses as many as ten to twelve people at a time.

66.     The restraint chair is located in R3 but that cell does not have a toilet, and detainees are told to relieve themselves while they are restrained regardless of whether or not they are fully-clothed.

67.     Upon information and belief, the St. Francois County Jail can house approximately 168 detainees and the average daily population is 136 detainees. The St. Francois County Jail population routinely exceeded 200 persons and, according to a recent government report, held approximately 300 people despite having never been expanded. Currently, approximately 40 beds are set aside for women in the "F" pod.

68.     St. Francois County delegates responsibility for the jail to the St. Francois County Sheriff's Department. The Sheriff maintains the jail facility, provides bailiffs for the court, serves papers and warrants, and answers calls for service. As part of his responsibilities in maintaining the jail, the Sheriff is responsible for the jail's financial obligations, including paying bills and maintaining equipment. The Sheriff reports the budget to St. Francois County's Treasurer, Auditor, and County Commissioner. The Sheriff is responsible for hiring deputies and the jail nurse, and staffing the Jail. The St. Francois County Sheriff is the final policy- and decision- maker for the County and ultimately responsible for providing training and determining the policies, practices, and customs for the St. Francois County Jail. While the Sheriff is an elected position, St. Francois County Sheriff's Department deputies are employees of St. Francois County. Upon information and belief, Daniel Bullock was duly elected Sheriff of  St. Francois County at all times relevant to this complaint.

69.     The St. Francois County Sheriff delegates the oversight of the day-to-day operations of the jail to the Jail Administrator. The Jail Administrator directly oversees Jail Sergeants and the deputies who work in the jail and is responsible for setting the jail work schedule, providing training, assigning duties, and ensuring the policies, practices, and customs of the St. Francois County Jail are followed. The Jail Administrator reports directly to the St. Francois County Sheriff. Upon information and belief, Dennis Smith was the jail administrator at all times relevant to this complaint.

70.     Upon information and belief, since 2016 St. Francois County has contracted with Advanced Correctional Healthcare, Inc. (ACH) to provide detainee medical care at the jail. Pursuant to this contract, the ACH physician and/or mid-level practitioner should visit the jail weekly and be available twenty-four hours a day, seven days a week, to ensure detainees receive adequate medical care.  Upon information and belief, Doctor Charles Pewitt was and is the physician hired by ACH to provide medical care and treatment to detainees at the St. Francois County Jail at all times relevant to this complaint.

71.     The jail nurse is hired by the Sheriff and employed by St. Francois County and, along with the deputies, is responsible for providing immediate care and treatment to detainees at the jail.  The nurse is supposed to be available twenty-four a day, seven days a week, to ensure detainees receive adequate medical care. However, Ms. Smith would often not respond to calls or texts from deputies requesting medical assistance on behalf of detainees. Upon information and belief, Heather Smith was the St. Francois County jail nurse at all times relevant to this complaint.

### The *Maness* Litigation

72.     Since 2005, there have been approximately 27 lawsuits filed in the Eastern District of Missouri regarding the conditions of confinement at the St. Francois County Jail. These cases

allege various constitutional violations under the Fourth, Fifth, Eighth, and Fourteenth Amendments based on conditions of physical violence, denial of medical care, lack of food, overcrowding, and more.[1]

73.    In 2006, the plaintiffs in *Maness v. County of St. Francois* brought a §1983 action for violations of the Eighth, Fourth, Fifth, and Fourteenth Amendments after Patricia Maness attempted suicide in her cell at the jail and was pronounced dead 40 hours later.[2]

74.    When jail staff found Ms. Maness, who had hung herself in her cell, the jail did not have a defibrillator so an employee had to retrieve a CPR mask from her parked car outside of the jail prior to staff providing CPR.[3]

75.    This Court found that "based on all of the evidence in this case, Sheriff Bullock had notice that the training procedures and supervision of jailers were lawfully inadequate and likely

---

[1] *Thorne v. St. Francois County Jail*, No. 4:05-CV-00938-SNL, 2005 WL 1828818 (E.D. Mo. Aug. 2, 2005); *Maness v. Cty. of St. Francois*, No. 4:04CV01157 ERW, 2006 WL 1738370 (E.D. Mo. June 19, 2006); *Clark v. Harris*, No. 4:04CV1570 RWS, 2007 WL 2701955 (E.D. Mo. Sept. 11, 2007); *Hensley v. Ray*, No. 4:07CV00389(ERW), 2007 WL 2084108 (E.D. Mo. July 16, 2007); *Kinderlen v. St. Francois County*, No. 4:08CV1095 DJS, 2008 WL 3538925 (E.D. Mo. Aug. 11, 2008); *Diaz v. Peares*, No. 4:08CV01322 ERW, 2008 WL 4449445 (E.D. Mo. September 26, 2008); Workman v. Jail Administrator, No. 4:08–CV–1323 CAS 2008, WL 4488903 (E.D. Mo. September 29, 2008); *Davis v. Nixon*, No. 4:09–CV–1435–DDN, 2009 WL 3246891 (E.D. Mo. October 6, 2009); *Brandon v. County of St. Francois*, No. 4:10CV2193 TCM 2010, WL 5391268 (E.D. Mo. December 22, 2010); *Saling v. St. Francois County Jail,* No. 4:11CV958 DDN, 2011 WL 2144652 (E.D. Mo. May 31, 2011); *Popek v. St. Francois County*, No. 4:11CV960 TIA 2011, WL 2214182 (E.D. Mo. June 7, 2011); *Estate of Beelek v. Farmington Missouri Hosp. Co., LLC*, No. 4:10CV2068 CDP, 2011 WL 4008018 (E.D. Mo. Sept. 8, 2011); *Saling v. St. Francois County Jail*, No. 4:11–CV–2014–CEJ, 2012 WL 686306 (E.D. Mo. March 2, 2012); *Cooks v. Glasier*, No. 4:12CV118 HEA, 2012 WL 910262 (E.D. Mo. March 16, 2012); *Saling v. St. Francois County Sheriff's Dept.*, No. 4:12–CV–1596–JAR, 2012 WL 5258899 (E.D. Mo. Oct. 23, 2012); *Estate of Beelek v. Farmington Missouri Hosp. Co., LLC*, No. 4:10CV2068 CDP, 2013 WL 1721605 (E.D. Mo. April 22, 2013); *Proby v. Bullock*, No. 4:14CV1355 HEA, 2014 WL 4966076 (E.D. Mo. Oct. 2, 2014); *Snyder v. Bullock*, No. 4:14CV1711 RWS, 2014 WL 6694795 (E.D. Mo. Nov. 26, 2014); *Douglas v. St. Francois Cty. Jail*, No. 414CV1821RLW, 2014 WL 7003812 (E.D. Mo. Dec. 10, 2014); *Halter v. St. Francois County Jail*, No. 4:14–CV–1891 CAS, 2015 WL 58778 (E.D. Mo. Jan. 5, 2015); *Moore v. St. Francois County Jail*, No. 4:14–CV–1911 CAS, 2015 WL 94543 (E.D. Mo. Jan. 7, 2015); *Stewart v. St. Francois County Jail*, No. 4:14CV1973 RLW, 2015 WL 235215 (E.D. Mo. Jan. 16, 2015); *Wilson v. Bullock*, No. 4:14-CV-1800-CDP, 2015 WL 4635251 (E.D.Mo. Aug. 3, 2015); *Kozik v. St. Francois County Jail*, No. 4:17–CV–151 CDP, 2017 WL 633853 (E.D. Mo. Feb. 16, 2017); *Pirtle v. Bullock*, No. 4:18-cv-2101-JMB, 2019 WL 446893 (E.D. Mo. Feb. 5, 2019); *Dennis v. Smith*, No. 4:18-cv-00821-AGF, 2019 WL 296480 (E.D. Mo. Jan. 23, 2019); *Dennis v. Smith*, No. 4:18-cv-00821-AGF, 2019 WL 1643342 (E.D. Mo. April 16, 2019).

[2] No. 4:04CV01157 ERW, 2006 WL 1738370 (E.D. Mo. June 19, 2006).

[3] *Id*. at 2.

to result in a constitutional violation" and dismissed St. Francois County's Motion for Summary Judgment.[4]

76.     In making this determination , this Court noted a few key factual findings:

a.   "[S]ince October 1996 when the Jail was constructed, there have been two suicides by hanging in this jail, other than Maness, along with an additional three attempted suicides since October 2004."[5]

b.   Additionally, Corporal James Honey said in his deposition that he had not officially heard of any additional suicides or attempts at the Jail, but "unofficially," "[y]ou're not supposed to ask."[6]

c.   "There is evidence in the record that for at least several minutes after learning that Maness was suspended by her neck in the Jail cell, jailers behaved as if there was no methodology, order, or adherence to any procedure, policy or practice they were following in extricating Maness and administering medical care to her."[7]

d.   "Actions of the jailers suggest a failure of proper supervision and training and a consequent deprivation of a constitutional right by delay in receipt of medical care to Maness."[8]

e.   Sheriff Bullock claimed that the training procedures were adequate and Defendants argued that the Jail had unwritten policies, but this Court "has found no evidence in the record relating to specific policies, written or unwritten, instructing the jailers on measures taken in the event of an inmate suicide."[9]

---

[4] No. 4:04CV01157 ERW, 2006 WL 1738370 (E.D. Mo. June 19, 2006).
[5] *Id*. at 11.
[6] *Id*. at 11.
[7] *Id*. at 11.
[8] *Id*. at 11.
[9] *Id*. at 11.

**Jail Conditions**

77.     In 2017, the U.S. Marshal revoked a contract for the St. Francois County Jail to house federal detainees. The Marshal's inspection report found that the jail "did not have written policies and procedures that describe[d] all facets of facility operations, maintenance, and administration available at the time of inspection" and identified a litany of conditions and provision of health care concerns.

## III.    GENERAL ALLEGATIONS

**Unsanitary and Unhealthy Conditions: Overflowing sewage, black mold, and unhygienic conditions**

78.     Defendant County subjected people confined pretrial in the St. Francois County Jail, including Plaintiffs and class members, to substantial risk of harm, injury, or death by exposing them to unsanitary and unhealthy conditions, including overflowing sewage and black mold. The County failed to provide cleaning supplies, failed to provide staff to clean the facility, and failed to employ sufficient remediation measures to eradicate inhumane and unsanitary conditions at the St. Francois County Jail.

79.     Defendants County and Bullock have been aware that these unsanitary conditions were inadequate since at least 2017 when the U.S. Marshal cited the unsanitary conditions of the jail and revoked St. Francois County's contract to receive federal detainees.

80.     Mr. Hopple, Ms. Rudigier, and Mr. Mesey constantly saw black mold while detained at the St. Francois County Jail, especially in the living quarters and bathing areas.

81.     Defendant County made no significant efforts to remedy the dangerous condition posed by mold.

82.     Toilets, sinks and showers in the living area are filthy and regularly experienced plumbing problems. For example, during Mr. Hopple's detention, he observed toilets and sinks overflowing, forcing Mr. Hopple and other detainees to navigate urine and feces in order to use restroom facilities.

83.     Plaintiffs recall that the showers at the St. Francois County jail were unusable because the water was so hot it would scald their skin. When Mr. Hopple requested the deputies turn the water in the shower down, the deputies turned the water down to a temperature that was so cold detainees could not use it. Essentially, the extreme temperatures in the shower at the St. Francois County Jail at all time relevant to this complaint made it impossible for Plaintiffs and other similarly situated individuals to adequately and safely bathe while they were detained.

84.     Upon information and belief, cleaning supplies are rarely used. Deputies do not consistently provide cleaning supplies, and what supplies are given are inadequate to meet the cleaning needs of the detainees. Deputies themselves do not clean the St. Francois County jail and rely on the detainees to do so and provide a single bucket of water and mop to each of the men and womens' dorms.

**Inadequate Medical Care**

85.     Defendant County has subjected all people confined at the St. Francois County Jail, including Plaintiffs and others similarly situated, to a substantial risk of harm, injury, or death by failing to provide adequate mechanisms to request medical care by not advising detainees of their rights with regard to same and by failing to ensure that detainees have consistent process for requesting medical care or disputing Defendants' refusal to provide the same when requested; failing to provide adequately trained and qualified staff to address the needs of the jail's detainees, and failing to provide adequate medical care to detainees.

86.     Defendant County failed to conduct an adequate assessment to identify the medical needs of individuals entering the St. Francois County jail, nor did Defendant County have a consistent or efficient process for people detained in its jail to request and receive medical care while detained.

87.     Defendant County failed to have adequate processes and procedures regarding communications between ACH physician Dr. Pewitt and Ms. Smith about patient records and patient medical conditions to ensure detainees received adequate medical care.

88.     As a result of these insufficient processes, Defendant County denied or provided inadequate medical care for detainees at the St. Francois County Jail.

89.     Upon information and belief, Defendants County, Daniel Bullock, Dennis Smith and Heather Smith were all responsible for responding to and providing medical treatment to detainees at the St. Francois County Jail.

90.     Upon information and belief, the Jail Nurse was only available during weekdays from 7:00 AM to 3:00 PM. Upon information and belief, the Jail Nurse was responsible for her own hours and routinely left before the end of her shift.

91.     Upon information and belief, Ms. Smith was supposed to be available in person or on call 24 hours a day, 7 days a week to respond to the medical needs of detainees.

92.     Upon information and belief, Ms. Smith routinely failed to respond to calls for medical treatment on nights and weekends.

93.     Upon information and belief, St. Francois County has engaged with Advanced Correctional Healthcare (ACH) for ACH to provide consultation services, diagnostic testing, hospital services, and  dental care to detainees at the St. Francois County Jail.

94.     Upon information and belief, ACH was to make a physician and/or mid-level practitioner available to St. Francois County twenty-four hours a day, seven days a week. This physician and/or mid-level practitioner was supposed to visit the facility weekly, or as otherwise agreed to by ACH and St. Francois County.

95.      Upon information and belief, Dr. Charles Pewitt was the physician assigned by ACH to visit the facility.

96.     Upon information and belief, Dr. Pewitt did not visit St. Francois County jail weekly.

97.     As a result, there was no adequately trained medical professional available if detainees required emergency medical treatment during evening and/or weekends.

98.     During weekday shifts, when detainees were out of their cells, they could request medical care by directly asking a deputy or the nurse, by filling out a medical request slip if they were available, or by pressing the emergency medical call button near the entrance to the dormitories. When detainees were locked down in their cells, there was no way to request medical care other than banging on the door and walls and crying out for the Deputies attention.

99.     It was the official policy, practice, and custom of Defendant County to only provide trained medical personnel at the Jail during weekdays from 7:00 AM to 3:00 PM. During nights and weekends, there was no medical staff immediately available to respond to medical emergencies. Furthermore, deputies warned detainees against pressing the emergency medical call button and retaliated against those who did.

100.    It was the official policy, practice, and custom of Defendant County to segregate detainees who requested or needed medical care on nights and weekends in one of the holding cells until the next shift the nurse was available.

101.    It was the policy, practice, and custom of the Defendant County to charge detainees for verbal and written requests for medical care made to the deputies or nurse, even if they did not receive medical care. Additionally, detainees do not receive any confirmation that they made a request for medical care and therefore, there is no way for detainees to follow up on their request.

102.    It was the official policy, practice, and custom of St. Francois County to assign the newest and least experienced deputies to work at the St. Francois County Jail.  These deputies were not provided any specific training to work with detainees within the jail or sufficient training to identify and respond to medical emergencies. As a result, deputies were selective and arbitrary in determining which medical conditions warranted medical evaluation and which did not. In some cases, this resulted in the exacerbation of serious medical conditions.

103.    Deputies working at the St. Francois County Jail were provided inadequate training on how to use medical equipment. For example, instead of seeking emergency medical treatment for detainees experiencing a mental health crisis, deputies placed the individual in a five-point restraint chair until the detainee calmed down. While in the restraint chair, detainees were not provided medical care or treatment, food, water, or even the ability to stand up to use the bathroom. Detainees were left in the chair until deemed sufficient by deputies, sometimes up to twenty-four hours.

104.    The general indifference to requests for medical care extended to mental health care treatment. For example, prior to her detention, Ms. Rudigier had been prescribed and regularly took medication for her mental illnesses. Despite informing the deputies and nurse Heather Smith of her need for medication during her intake assessment, Ms. Rudigier only received some of her medication while she was detained at St. Francois County Jail. Similarly, Mr. Mesey was prescribed mental health medication prior to his detention at the St. Francois County Jail, however,

despite Mr. Mesey informing Ms. Smith and deputies of his mental health needs upon intake, he only received some of his medication while detained at the St. Francois County Jail.

**Overcrowding, Inadequate Staffing, Violence, and Retaliation from St. Francois County Jail Staff**

105.    Defendant County has a history of overcrowding at the jail which subjected Plaintiffs and all those confined at the St. Francois County Jail to a substantial risk of harm, injury or death.

106.    Defendant County's failure to provide adequate training to deputies subjected Plaintiffs and all those confined at the St. Francois County Jail to a substantial risk of harm, injury, or death.

107.    Defendant County's lack of oversight, lack of training and lack of supervision of deputies working at the St. Francois County Jail created an environment that promoted violence and retaliation. Deputies perpetuated violence between detainees themselves in a cruel and inhumane practice called Friday Night Fights.[10]

108.    Under the Friday Night Fights scheme, during evening and weekend shifts deputies would select two detainees to fight each other for the entertainment of the deputies. The detainees would be forced to fight each other while the deputies watched from another room via television monitor.

109.    Detainees, unsurprisingly, were frequently injured during these fights. However, since these fights occurred on nights and weekends, no medical assistance was available until the nurse chose to take her next shift at the jail, if then.

---

[10] https://www.themarshallproject.org/2020/07/29/your-local-jail-may-be-a-house-of-horrors

110.    Upon information and belief, deputies also retaliated against detainees who requested medical care by placing them in segregation or solitary confinement, also known as "the hole."

111.    Upon information and belief, deputies retaliated against detainees by putting them in the restraint chair.

**Extreme Cold**

112.    Defendant County has subjected and continues to subject all people confined at the St. Francois County Jail, including Plaintiffs and class members, to a substantial risk of harm, injury, or death by failing to employ sufficient devices and mechanisms to mitigate the extreme cold.

113.    The average temperature in Farmington, Missouri between November and February 2015-2019 was just over 39 degrees.

114.    During winter months, temperatures inside the St. Francois County jail dropped so low that detainees could see their breath. The cold temperatures were not only uncomfortable, but also created unsafe and unhealthy conditions for Plaintiffs and others similarly situated.

115.    Detainees were generally provided with only one blanket, which was insufficient to keep warm in the St. Francois County Jail.

116.    Mr. Hopple recalls asking deputies at the St. Francois County Jail to turn up the heat and the deputies steadfastly refusing to do so. Similarly, Mr. Mesey recalls the Jail always being cold and the jail deputies ignoring detainee requests for heat. Ms. Rudigier's cell was so cold that she was able to store her milk from breakfast in the open there without concern of it spoiling.

117.    Defendant County, through its employees and final decision makers, has willfully refused and failed to take reasonable measures to protect detainees from the extremely cold

temperatures during the winter months. Officials for Defendant County have shown deliberate indifference to the health of Plaintiffs and others similarly situated by failing to enact intervening policies that would protect detainees from cold-related health issues.

**Discrimination against People with Disabilities**

118.    St. Francois County does not have an effective or automated system to identify and track the accommodation and other needs of people with disabilities, or to ensure the provision of reasonable accommodations.

119.    As a public entity, St. Francois County had an obligation to provide detainees with disabilities with reasonable accommodations to ensure they had equal access to the goods and services offered by the jail. 42 U.S.C. § 12132.

120.    St. Francois County did not timely or consistently provide reasonable accommodations to detainees with disabilities. For example, when Mr. Mesey requested that he be permitted to have and use his orthopedic footwear to ensure he was able to walk around the jail as a reasonable accommodation, his request was denied because, according to Jail Administrator Dennis Smith, the jail "[didn't] do that."

121.    Upon information and belief, St. Francois County routinely denied requests for accommodations made by detainees with disabilities, including the denial of ambulatory devices.

## IV.    CLASS ALLEGATIONS

### Class Definitions

122.    The named Plaintiffs bring this action on their own behalf and, pursuant to Fed. R. Civ. P. 23(b)(1) and/or (b)(3), as a class action on behalf of a class of persons defined as:

**Proposed Class:** All persons who, from December 21, 2015 until the present, were detained pretrial in the St. Francois County Jail.

**Subclass:** All persons who, from December 21, 2015 until the present, were detained pretrial in a holding cell in St. Francois County Jail.

123.    Under Federal Rule of Civil Procedure 23(a), certification of a class is appropriate where: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

124.    This action is brought and may properly be maintained as a class action pursuant to 23(b)(1) and/or (b)(3), of the Federal Rules of Civil Procedure. This action satisfies the requirements of numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a).

## RULE 23(a)

### Typicality

125.    Plaintiffs Hopple, Rudigier, and Mesey are all typical members of the Proposed Class and its Subclass.

126.    The named Plaintiffs and members of the class each have a tangible and legally protectable interest at stake in this action.

127.    The claims of the named class representatives and the absent class members have a common origin and share a common basis. Their claims originate from the same illegal, unconstitutional practices of Defendants, and Defendants act in the same way toward the Plaintiffs and members of the class.  As such, each named Plaintiff has been the victim of the unconstitutional practices of one or more of the Defendants.

128.    The proposed class representatives state claims for which relief can be granted that are typical of the absent class members.  If brought and prosecuted individually, the claims of each

29

class member would necessarily require proof of the same material and substantive facts, rely upon the same remedial theories, and seek the same relief.

129.   The claims and remedial theories pursued by the named class representatives are sufficiently aligned with the interest of absent class members to ensure that the universal claims of the class will be prosecuted with diligence and care by the Plaintiff as representative of the class.

**Numerosity**

130.   The members of the class are so numerous that joinder of all members is impracticable.  On information and belief, the class consists of at least hundreds of persons.  The class is, however, ascertainable as the names and addresses of all class members can only be identified in records maintained by the Defendants.

**Commonality**

131.   The questions of law and fact common to the class include, *inter alia*:

   a.   Whether the conditions of the St. Francois County Jail violate the Constitution,

   b.   Whether the actions taken by the individual Defendants (or their failure to take such necessary action) violated the Constitution.

   c.   Whether Defendants' policies violate the Constitution,

   d.   Whether Defendants' practices violate the Constitution,

   e.   Whether Defendants' customs violate the Constitution,

   f.   Whether Defendants' training violates the Constitution,

   g.   Whether Defendants' supervision violates the Constitution,

   h.   Whether Defendants' actions violate the ADAA, and

   i.   Whether Defendants' actions violate the Rehabilitation Act.

## **Adequate Representation**

132.    The named Plaintiffs are willing and prepared to serve the Court and proposed class in a representative capacity with all of the obligations and duties material thereto.  The Plaintiffs will fairly and adequately protect the interests of the class and have no interests adverse to, or which directly or irrevocably conflict with, the interests of other members of the class.  The self-interests of the named class representatives are co-extensive with and not antagonistic to those of the absent class members. The proposed representatives will undertake to truly protect the interests of the absent class members.

133.    The named Plaintiffs have engaged the services of counsel indicated below.  Said counsel are experienced in complex class litigation, will adequately prosecute this action, and will assert, protect, and otherwise well represent the named class representatives and absent class members.

## **RULE 23(b)(1)**

134.    The prosecution of separate actions by individual members of the class would create a risk of adjudication with respect to individual members of the class which would, as a practical matter, be dispositive of the interests of other members of the class who are not parties to the action, or could substantially impair or impede their ability to protect their interests.

135.    The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the parties opposing the class. Such incompatible standards and inconsistent or varying adjudications, on what would necessarily be the same essential facts, proof, and legal theories would also create and allow to exist inconsistent and incompatible rights within the plaintiff class.

**RULE 23(b)(3)**

136.    The questions of law and fact common to members of the class predominate over any questions affecting only individual members.

137.    A class action is superior to other available methods for the fair and efficient adjudication of the controversies herein in that:

        a.    Individual claims by the class members are impractical as the costs of pursuit far exceed what any one plaintiff or class member has at stake;

        b.    There has been no litigation over the controversies herein and individual members of the class have no interest in prosecuting and controlling separate actions; and

        c.    The proposed class is manageable.

**CLAIMS FOR RELIEF**

**COUNT I**

**Jail Conditions Amounting to Cruel and Unusual Punishment in Violation of the Fourteenth Amendment**

**(Against Defendant St. Francois County)**

138.    Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

139.    Plaintiffs bring this Count I individually and on behalf of the members of the Class against Defendants.

140.    42 U.S.C. § 1983 provides that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia,

subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…

141.    Plaintiffs are citizens of the United States and thus entitled to the full benefit and equal protection of the Federal Constitution and all laws and regulations enacted thereunder.

142.    St. Francois County is a person under 42 U.S.C. § 1983.

143.    St. Francois County and its employees, agents, and representatives were, at all times relevant, acting under the color of ordinances, regulations, customs, and laws of the State of Missouri.

144.    At all times relevant to this Complaint, Plaintiffs had a clearly established constitutional right under the Fourteenth Amendment to be free from conditions that amount to cruel and usual punishment, as described above, including:

a.    overflowing sewage,

b.    black mold,

c.    inadequate medical care,

d.    understaffing,

e.    retaliation by St. Francois County Jail staff,

f.    extreme cold, and

g.    such further unconstitutional conditions that discovery reveals.

145.    Each condition described above, on its own, violates the Constitution.

146.    Pleading alternatively, the totality of the circumstances illustrated by the conditions described above violates the Constitution.

147.    The conditions described above are intentionally punitive in nature, in violation of the Constitution.

148.    The conditions described above are arbitrary and not reasonably related to any legitimate penological goal, in violation of the Constitution.

149.    The conditions described above transgress today's broad and idealistic concepts of dignity, civilized standards, humanity, and decency, in violation of the Constitution.

150.    The conditions described above deprive pretrial detainees of the minimal civilized measures of life's necessities, in violation of the Constitution.

151.    St. Francois County and its employees, agents, and representatives knew, or should have known, of these rights during the time period relevant to this complaint as they were clearly established.

152.    St. Francois County and its employees, agents, and representatives were deliberately indifferent to the excessive health risks created by the conditions at the St. Francois County Jail and have violated Plaintiffs right to basic human dignity and to be free from cruel and unusual pretrial conditions under the Fourteenth Amendment to the United States Constitution.

153.    The acts or omission of St. Francois County and its employees, agents, and representatives as described herein, deprived Plaintiffs of their constitutional rights, resulting in unnecessary pain, suffering, and causing Plaintiffs to incur damages.

154.    St. Francois County and its employees, agents, and representatives intentionally, knowingly, and purposely deprived Plaintiffs of their clearly established rights, privileges, and

immunities as secured by the Constitution and laws of the United States in violation of 42 U.S.C. § 1983.

155.    St. Francois County and its employees, agents, and representatives are policymakers for the St. Francois County Jail, and in that capacity, established policies, procedures, customs, and/or practices for the same.

156.    St. Francois County and its employees, agents, and representatives maintained policies, procedures, customs, and/or practices exhibiting deliberate indifference to the constitutional rights of citizens, which were the moving forces behind and proximately caused the violations of Plaintiffs constitutional rights as set forth herein.

157.    As a direct result of the policies, practices and customs described herein, Plaintiffs and the Class have been subjected to the unconstitutional conditions above and are the proximate cause of Plaintiffs' and the Class's deprivation of rights under the Fourteenth Amendment.

WHEREFORE, Plaintiffs respectfully request the relief set forth below in the Prayer for Relief.

## COUNT II

**Deliberately Indifferent Policies, Practices, and/or Customs in Violation of the Fourteenth Amendment**

**(Defendants St. Francois County, Sheriff Dan Bullock, and Dennis Smith)**

158.    Plaintiffs incorporate by reference the above allegations as though fully set forth herein.

159.    42 U.S.C. § 1983 provides that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia,

subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress….

160.     Plaintiffs are citizens of the United States and thus entitled to the full benefits and equal protection of the Federal Constitution and allows and regulations enacted thereunder.

161.     Defendants are persons under 42 U.S.C. § 1983.

162.     Defendants were, at all times relevant, acting under the color of ordinances, regulations, customs, and laws of the State of Missouri.

163.     At all times relevant to this complaint, Plaintiffs and the proposed class members had clearly established constitutional rights, including the right under the Fourteenth Amendment to not be subjected to unconstitutional policies, practices, and/or customs.

164.     Defendants knew or should have known of these rights during the time period giving rise to this complaint as they are clearly established.

165.     The policies, practices, and/or customs of Defendants, as described herein, deprived Plaintiffs and the proposed class of their constitutional and statutory rights, resulting in pain, suffering, and causing Plaintiff damages.

166.     Defendants intentionally, knowingly, and purposely deprived Plaintiffs and the members of the proposed class of their clearly established rights, privileges, and immunities as secured by the Constitution and laws of the United States in violation of 42 U.S.C. § 1983.

167.     Defendants are policymakers for the St. Francois County Jail, and in that capacity, established policies, procedures, customs, and/or practices for the same.

168.     Defendants maintained policies, procedures, customs, and/or practices exhibiting deliberate indifference to the constitutional rights of Plaintiffs and the proposed class which were the moving forces behind and proximately caused the violations of their constitutional rights as set forth herein.

169.     Defendants have developed and maintained long-standing, department-wide policies, procedures, practices, and/or customs amounting to deliberate indifference to Plaintiffs and the proposed class.

170.     Based on information and belief, Defendants adopted the following policies that were the moving force behind the harms suffered by plaintiffs:

      a.     Upon information and belief, Defendants have a policy and practice of assigning the lowest level deputies to the county jail. There is no official training regime for deputies working as correctional officers and training is almost exclusively on-the-job. Deputies are provided no training on identifying and responding to medical needs of detainees. As a result, these newly minted deputies have no training regarding working in a correctional facility, how to identify medical/mental health needs, how to evaluate and request the need for immediate medical attention, or what to do in response to a medical emergency.

      b.     Upon information and belief, Defendants have a policy and practice of failing to provide detainees a way to request emergency medical assistance.

      c.     Upon information and belief, the Defendants have intentionally failed and refused to provide sufficient medical staff during evenings and weekends to see to the medical needs of pretrial detainees.

d.    Defendants do not have a functional system to ensure that people receiving outside specialty care, diagnostic tests, emergency care, and inpatient services are evaluated upon their return to the jail, that discharge instructions are obtained and followed, and that specialists' treatment recommendations are provided

e.    Defendants provide no way for detainees locked in their cells with a way to request emergency medical care;

f.    Defendants do not provide medical professionals, such as doctors or nurses, or medical care on the evenings or weekends.

g.    Defendants have a policy to only request emergency medical care on weekends when a detainee is unconscious;

h.    Defendants have a policy to place individuals experiencing medical emergencies an isolated holding cell or in the restraint chair instead and only requesting emergency medical care after a detainee is unconscious;

i.    Defendants have a policy to not properly monitor detainees, including Plaintiffs;

j.    Defendants do not have consistent or lawful standards or practices with respect to the use of the jail's temporary holding cells; and,

k.    Such other unconstitutional policies, practices, and/or customs that discovery will reveal.

171.    The above policies resulted in the deliberate indifference to Plaintiffs' and the proposed class members' constitutional rights as described herein.

172.    Defendants have shown deliberate indifference to or tacit authorization of the above conduct after notice to officials of that misconduct.

173.    Plaintiffs extended pain and suffering was caused by Defendants' unconstitutional policies, procedures, practices, and/or customs.

174.    The systemic nature of Defendants' conduct shows a complete indifference or a conscience disregard of the safety of Plaintiffs and the proposed class, thereby justifying an award of punitive damages in a sum as will serve to punish and deter Defendants, and others, from like conduct in the future.

WHEREFORE, Plaintiffs respectfully request the relief set forth below in the Prayer for Relief.

## COUNT III

**Deliberately Indifferent Policies, Practices, and/or Customs in Violation of the Fourteenth Amendment**

**(Defendant ACH)**

175.    Plaintiffs incorporate by reference the above allegations as though fully set forth herein.

176.    42 U.S.C. § 1983 provides that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be

39

liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress….

177.   Plaintiffs are citizens of the United States and thus entitled to the full benefits and equal protection of the Federal Constitution and allows and regulations enacted thereunder.

178.   ACH is a person under 42 U.S.C. § 1983.

179.   ACH and its employees, agents, and representatives were, at all times relevant, acting under the color of ordinances, regulations, customs, and laws of the State of Missouri.

180.   At all times relevant to this complaint, Plaintiffs and the proposed class members had clearly established constitutional rights, including the right under the Fourteenth Amendment to not be subjected to unconstitutional policies, practices, and/or customs.

181.   ACH and its employees, agents, and representatives knew or should have known of these rights during the time period giving rise to this complaint as they are clearly established.

182.   The policies, practices, and/or customs of ACH, as described herein, deprived Plaintiffs and the proposed class of their constitutional and statutory rights, resulting in pain, suffering, and causing Plaintiff damages.

183.   ACH and its employees, agents, and representatives intentionally, knowingly, and purposely deprived Plaintiffs and the members of the proposed class of their clearly established rights, privileges, and immunities as secured by the Constitution and laws of the United States in violation of 42 U.S.C. § 1983.

184.   ACH and its employees, agents, and representatives are policymakers for the St. Francois County Jail, and in that capacity, established policies, procedures, customs, and/or practices for the same.

185.    ACH and its employees, agents, and representatives maintained policies, procedures, customs, and/or practices exhibiting deliberate indifference to the constitutional rights of Plaintiffs and the proposed class which were the moving forces behind and proximately caused the violations of their constitutional rights as set forth herein.

186.    ACH and its employees have developed and maintained long-standing, department-wide policies, procedures, practices, and/or customs amounting to deliberate indifference to Plaintiffs and the proposed class.

187.    Based on information and belief, ACH adopted the following policies that were the moving force behind the harms suffered by plaintiffs:

a.      Upon information and belief, Defendant ACH has a policy and practice of failing to provide detainees a way to request emergency medical assistance.

b.      Upon information and belief, ACH has intentionally failed and refused to provide sufficient medical staff during evenings and weekends to meet the medical needs of pretrial detainees.

c.      ACH does not have a functional system to ensure that people receiving outside specialty care, diagnostic tests, emergency care, and inpatient services are evaluated upon their return to the jail, that discharge instructions are obtained and followed, and that specialists' treatment recommendations are provided

d.      ACH provides no way for detainees locked in their cells with a way to request emergency medical care;

e.      ACH does not provide medical professionals, such as doctors or nurses, medical care on the evenings or weekends.

      f.     ACH has a policy to only request emergency medical care on weekends when a detainee is unconscious;

      g.     ACH has a policy to place individuals experiencing medical emergencies an isolated holding cell or in the restraint chair instead and only requesting emergency medical care after a detainee is unconscious;

      h.     ACH has a policy to not properly monitor detainees, including Plaintiffs; and

      i.     Such other unconstitutional policies, practices and/or customs that discovery will reveal.

188.    The above policies resulted in the deliberate indifference to Plaintiffs' and the proposed class members' constitutional rights as described herein.

189.    ACH has shown deliberate indifference to or tacit authorization of the above conduct after notice to officials of that misconduct.

190.    Plaintiffs' extended pain and suffering was caused by ACH's unconstitutional policies, procedures, practices, and/or customs.

191.    The systemic nature of ACH's conduct shows a complete indifference or a conscience disregard of the safety of Plaintiffs and the proposed class.

WHEREFORE, Plaintiffs respectfully request the relief set forth below in the Prayer for Relief.

## **COUNT IV**

### **Failure to Train in Violation of the Fourteenth Amendment**

### **(Against Defendants St. Francois County, Sheriff Dan Bullock, and Dennis Smith)**

192.    Plaintiffs incorporate by reference the above allegations as though fully set forth herein.

193.    42 U.S.C. § 1983 provides that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress….

194.    Plaintiffs and members of the proposed class are citizens of the United States and thus entitled to the full benefits and equal protection of the Federal Constitution and allows and regulations enacted thereunder.

195.    St. Francois County is a person under 42 U.S.C. § 1983.

196.    St. Francois County and its employees, agents, and representatives were, at all times relevant, acting under the color of ordinances, regulations, customs, and laws of the State of Missouri.

197.    At all times relevant to this complaint, Plaintiffs and the proposed class members had clearly established constitutional rights, including the right under the Fourteenth Amendment to not be harmed as result of inadequate training.

198.    St. Francois County and its employees, agents, and representatives knew or should have known of these rights during the time period giving rise to this complaint as they are clearly established.

43

199.    The training conducted by St. Francois County, as described herein, deprived Plaintiffs and the proposed class of their constitutional and statutory rights, resulting in pain, suffering, and proximately causing Plaintiff damages.

200.    St. Francois County and its employees, agents, and representatives intentionally, knowingly and purposely deprived Plaintiffs and the members of the proposed class of their clearly established rights, privileges, and immunities as secured by the Constitution and laws of the United States in violation of 42 U.S.C. § 1983.

201.    St. Francois County and its employees, agents, and representatives engaged in constitutionally inadequate training and supervision which were the moving forces behind and proximately caused the violations of Plaintiffs' and the proposed class members' constitutional rights as set forth herein.

202.    Defendants County, Sheriff Dan Bullock, and Dennis Smith all had a duty to train their employees on how to obtain immediate medical and/or psychological evaluations for pretrial detainees.

203.    Defendants' constitutionally inadequate training and supervision, as described herein, includes but is not limited to:

    a.    Providing inadequate training on how to identify medical emergencies;

    b.    Providing inadequate training to respond to medical emergencies;

    c.    Providing inadequate training on identifying individuals with serious mental health disorders;

    d.    Providing inadequate training and supervision on the use of the restraint chair;

e.     Providing inadequate training on standards for use of the jail's temporary holding cells;

f.     Providing inadequate training on administering medication;

g.     Providing inadequate training to the nursing staff and physician on how to properly treat detainees in a jail setting;

h.     Providing inadequate training on how to identify overdoses;

i.     Upon information and belief, deputies assigned to work at the jail are provided with insufficient training regarding identifying or responding to detainees with dental care needs; and,

j.     Such for inadequate training and supervision as discovery will reveal.

204.    The inadequate training and supervision described herein demonstrates deliberate indifference because the need for training and/or supervision  was so obvious—and the lack of training and/or supervision was so inadequate—that it was likely to result in violating the rights of detainees such as Plaintiffs and the proposed class.

205.    The failure to adequately train and supervise led directly to the harms suffered by Plaintiffs and the proposed class.

206.    The systemic nature of Defendants' conduct shows a complete indifference or a conscience disregard of the safety of Plaintiffs and the proposed class.

WHEREFORE, Plaintiffs respectfully request the relief set forth below in the Prayer for Relief.

## <u>COUNT V</u>

**Failure to Train in Violation of the Fourteenth Amendment**

**(Against Defendant ACH)**

207. Plaintiffs incorporate by reference the above allegations as though fully set forth herein.

208. 42 U.S.C. § 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.…

209. Plaintiffs and members of the proposed class are citizens of the United States and thus entitled to the full benefits and equal protection of the Federal Constitution and allows and regulations enacted thereunder.

210. ACH is a person under 42 U.S.C. § 1983.

211. ACH and its employees, agents, and representatives were, at all times relevant, acting under the color of ordinances, regulations, customs, and laws of the State of Missouri.

212. At all times relevant to this complaint, Plaintiffs and the proposed class members had clearly established constitutional rights, including the right under the Fourteenth Amendment to not be harmed as result of inadequate training.

213. ACH and its employees, agents, and representatives knew or should have known of these rights during the time period giving rise to this complaint as they are clearly established.

214.    The training conducted by ACH, as described herein, deprived Plaintiffs and the proposed class of their constitutional and statutory rights, resulting in pain, suffering, and proximately causing Plaintiff damages.

215.    ACH and its employees, agents, and representatives intentionally, knowingly, and purposely deprived Plaintiffs and the members of the proposed class of their clearly established rights, privileges, and immunities as secured by the Constitution and laws of the United States in violation of 42 U.S.C. § 1983.

216.    ACH and its employees, agents, and representatives engaged in constitutionally inadequate training and supervision which were the moving forces behind and proximately caused the violations of Plaintiffs' and the proposed class members' constitutional rights as set forth herein.

217.    ACH had a duty to train jail employees on how to obtain immediate medical and/or psychological evaluations for pretrial detainees.

218.    ACH's constitutionally inadequate training and supervision, as described herein, includes but is not limited to:

    a.    Providing inadequate training on how to identify medical emergencies;

    b.    Providing inadequate training to respond to medical emergencies;

    c.    Providing inadequate training on identifying individuals with serious mental health disorders;

    d.    Providing inadequate training and supervision on the use of the restraint chair;

    e.    Providing inadequate training on administering medication;

f.   Providing inadequate training to the nursing staff and physician on how to properly treat detainees in a jail setting;

g.   Providing inadequate training on how to identify overdoses;

h.   Upon information and belief, deputies assigned to work at the jail are provided with insufficient training regarding identifying or responding to detainees with dental care needs; and,

i.   Such for inadequate training and supervision as discovery will reveal.

219.   The inadequate training and supervision described herein demonstrates deliberate indifference because the need for training and/or supervision  was so obvious—and the lack of training and/or supervision was so inadequate—that it was likely to result in violating the rights of detainees such as Plaintiffs and the proposed class.

220.   The failure to adequately train and supervise led directly to the harms suffered by Plaintiffs and the proposed class.

221.   The systemic nature of ACH's conduct shows a complete indifference or a conscience disregard of the safety of Plaintiffs and the proposed class.

WHEREFORE, Plaintiffs respectfully request the relief set forth below in the Prayer for Relief.

## COUNT VI

### Violation of the Americans with Disabilities Amendments Act

### (Against St. Francois County)

222.   Plaintiffs incorporate by reference each and every allegation contained above as if set forth fully herein.

223.   Defendant County is a public entity as defined under 42 U.S.C. § 12131 (1)(A).

224.    Defendant's conduct described herein violates the Americans with Disabilities Amendments Act (ADAA) by failing to ensure people with disabilities have access to, are permitted to participate in, and are not denied the benefits of, programs, services and activities.

225.    Defendant's conduct described herein violates the ADAA by failing to make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability.

226.    Defendant's conduct described herein violates the ADAA by failing to ensure that inmates or detainees with disabilities are housed in the most integrated setting appropriate to the needs of the individuals.

227.    Defendant's conduct described herein violates the ADAA by failing to furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities an equal opportunity to participate in a service, program, or activity of a public entity."

228.    Defendant's conduct described herein violates the ADAA by failing to notify people about their rights under the ADAA while detained in its jails.

229.    Defendant's conduct described herein violates the ADAA by failing to adopt and publish grievance procedures providing for prompt and equitable resolution of complaints alleging any action that would be prohibited by the ADAA.

230.    As a result of Defendant's policies and practices regarding people with disabilities in its jails, Plaintiffs and class members with disabilities do not have equal access to jail activities, programs, and services for which they are otherwise qualified.

231.    Defendant's conduct in violation of the ADAA described herein proximately caused the harms Plaintiffs and the members of the proposed class suffered, as described in this complaint.

WHEREFORE, Plaintiffs respectfully request the relief set forth below in the Prayer for Relief.

## COUNT VII

### Violation of the Rehabilitation Act

### (Against St. Francois County)

232.    Plaintiffs incorporate by reference each and every allegation contained above as if set forth fully herein.

233.    Defendant County receives federal funding within the meaning of the Rehabilitation Act.

234.    Defendant's conduct described herein violates Section 504 of the Rehabilitation Act by discriminating against people with disabilities solely on the basis of their disabilities and by failing to reasonably accommodate people with disabilities in its facilities, programs, activities, and services.

235.    As a result of Defendant's discriminating against and failing to provide a grievance procedure and reasonable accommodations to people with disabilities, Plaintiffs and class members with disabilities do not have equal access to jail activities, programs, and services for which they are otherwise qualified.

WHEREFORE, Plaintiffs respectfully request the relief set forth below in the Prayer for Relief.

## COUNT VIII

### Deliberate Indifference to Medical Needs in Violation of the Fourth and Fourteenth Amendments

### (Against Defendant Heather Smith in her individual and official capacities)

236.   Plaintiffs incorporate the above allegations as though fully set forth herein.

237.   42 U.S.C. § 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.…

238.   Plaintiffs and all members of the proposed class are citizens of the United States and thus entitled to the full benefits and equal protection of the Federal Constitution and regulations enacted thereunder.

239.   Defendant Nurse Heather Smith owed a duty under 42 U.S.C 1983 and the 8th Amendment of the United States Constitution as applied to the State of Missouri and its political subdivisions through the 14th amendment of the U.S. Constitution, to provide pre-trial detainees, including Plaintiffs and all members of the proposed class, with appropriate medical evaluations, and necessary medical treatment and care.

240.   Defendant Nurse Heather Smith is a person under 42 U.S.C. § 1983.

241.   Defendant Nurse Heather Smith is sued in her official and individual capacities.

242.   Defendant Nurse Heather Smith was at all times relevant to this Complaint, acting under the color of ordinances, regulations, customs, and laws of the State of Missouri.

243.     At all times relevant to this complaint, Plaintiffs and the proposed class had clearly established constitutional rights, including the right to receive adequate medical attention under the Fourteenth Amendment to the United States constitution.

244.     Plaintiffs and the proposed class had a clearly established right under the U.S. Constitution to be free from deliberate indifference to their serious medical needs.

245.     Defendant Nurse Heather Smith's deliberate indifference, as described herein, includes but is not limited to:

    a.      Failing to conduct adequate assessments;

    b.      Failing to provide an adequate process for detainees to request medical care;

    c.      Failing to inform detainees of the availability of a jail physician;

    d.      Failing to provide medication to detainees;

    e.      Ignoring detainees' objectively serious medical needs;

    f.      Failing to provide medical care to detainees who are placed into the restraint chair;

    g.      Charging detainees money for verbal and written requests for medical care, even if they do not receive medical care; and,

    h.      Such further acts of deliberate indifference as discovery reveals.

246.     The denial or delay of health care treatment for Plaintiffs and the proposed class was attributable to something more than simple negligence upon the part of Defendant Nurse Smith.

247.     Defendant Nurse Smith knew, or should have known, of the Plaintiffs' and proposed class members' rights at the time of the complained of conduct as they were clearly established.

248.    The acts or omissions of Defendant Nurse Smith, as described herein, deprived Plaintiffs and the proposed class of their constitutional and statutory rights, resulting in pain, suffering, and proximately causing Plaintiffs and the proposed class damages.

249.    Defendant Nurse Smith's actions and inactions, as described herein, were also malicious and/or involved reckless, callous, and deliberate indifference to Plaintiffs and the proposed class. The indifference displayed by Nurse Smith shocks the conscience and so violated Plaintiffs and the proposed class members' Fourteenth Amendment rights.

250.    Defendant Nurse Smith's conduct showed a complete indifference to or a conscious disregard for the safety of Plaintiffs and the proposed class members, thereby justifying an award of punitive damages in such sum as will serve to punish and deter Defendant, and others, from like conduct in the future.

251.    Plaintiffs are entitled to attorney' fees and costs pursuant to 42 U.S.C. 1988.

WHEREFORE, Plaintiffs respectfully request the relief set forth below in the Prayer for Relief.

## COUNT IX

### Deliberate Indifference to Medical Needs in Violation of the Fourth and Fourteenth Amendments

### (Against Defendant Advanced Correctional Healthcare)

252.    Plaintiffs incorporate the above allegations as though fully set forth herein.

253.    42 U.S.C. § 1983 provides that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other

person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.…

254.    Plaintiffs and all members of the proposed class are citizens of the United States and thus entitled to the full benefits and equal protection of the Federal Constitution and regulations enacted thereunder.

255.    Defendant ACH owed a duty under 42 U.S.C 1983 and the 8th Amendment of the United States Constitution as applied to the State of Missouri and its political subdivisions through the 14th amendment of the U.S. Constitution, to provide pretrial detainees, including Plaintiffs and all members of the proposed class, with appropriate medical evaluations, and necessary medical treatment and care.

256.    Defendant ACH is a person under 42 U.S.C. § 1983.

257.    Defendant ACH was at all times relevant to this Complaint, acting under the color of ordinances, regulations, customs, and laws of the State of Missouri.

258.    At all times relevant to this complaint, Plaintiffs and the proposed class had clearly established constitutional rights, including the right to receive adequate medical attention under the Fourteenth Amendment to the United States constitution.

259.    Plaintiffs and the proposed class had a clearly established right under the U.S. Constitution to be free from deliberate indifference to their serious medical needs.

260.    Defendant ACH's deliberate indifference, as described herein, includes but is not limited to:

   a.    Failing to provide an on-site jail physician;

    b.      Employing a policy to not conduct adequate assessments;

    c.      Employing a policy to not provide an adequate process for detainees to request medical care;

    d.      Failing to inform detainees of the availability of a jail physician;

    e.      Employing a policy to not provide medication to detainees;

    f.      Employing a policy of ignoring detainees' objectively serious medical needs;

    g.      Employing a policy to not provide medical care to detainees who are placed into the restraint chair;

    h.      Charging detainees for verbal and written requests for medical care, even if they do not receive medical care; and,

    i.      Such further acts of deliberate indifference as discovery reveals.

261.    The denial or delay of health care treatment for Plaintiffs and the proposed class was attributable to something more than simple negligence upon the part of Defendant ACH.

262.    Defendant ACH knew, or should have known, of the Plaintiffs' and proposed class members' rights at the time of the complained of conduct as they were clearly established.

263.    The acts or omissions of Defendant ACH, as described herein, deprived Plaintiffs and the proposed class of their constitutional and statutory rights, resulting in pain, suffering, and proximately causing Plaintiffs and the proposed class damages.

264.    Defendant ACH's actions and inactions, as described herein, were also malicious and/or involved reckless, callous, and deliberate indifference to Plaintiffs and the proposed class. The indifference displayed by ACH shocks the conscience and so violated Plaintiffs and the proposed class members' Fourteenth Amendment rights.

265.     Defendant ACH's conduct showed a complete indifference to or a conscious disregard for the safety of Plaintiffs and the proposed class members.

266.     Plaintiffs are entitled to attorney' fees and costs pursuant to 42 U.S.C. 1988.

WHEREFORE, Plaintiffs respectfully request the relief set forth below in the Prayer for Relief.

## PRAYER FOR RELIEF

WHEREFORE, having stated the foregoing allegations and claims, Plaintiffs pray that this Court:

A.     Certify the Classes as requested herein;

B.     Appoint Plaintiffs' counsel as lead counsel for the Classes;

C.     Enter a declaratory judgment that declares that Defendant's conduct has violated Plaintiffs' and class members' Fourteenth Amendment rights to safe, sanitary, and healthy jail conditions, and to be free from punishment;

D.     Enter a judgment compensating the Plaintiffs and others similarly situated for the damages that they suffered as a result of Defendant's unconstitutional and unlawful conduct; and

E.     Impose punitive damages against Heather Smith in her individual capacity;

F.     Award pre-judgment and post-judgment interest;

G.     Issue an order and judgment granting reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

H.     Any other relief this Court deems just and proper.

## DEMAND FOR JURY

Plaintiffs and the proposed Class respectfully demand a jury trial on all issues so triable.

Dated: December 21, 2020                Respectfully submitted,

By: /s/ Corrigan L. Lewis
    **ARCHCITY DEFENDERS, INC.**
    Blake A. Strode  (MBE #68422MO)
    Jacki J. Langum (MBE #58881MO)
    Corrigan L. Lewis (MBE #68001MO)
    Katrina Hudson (MBE #69576MO)
    440 North 4th St., #390 Saint Louis, MO 63102 855-724-2489
    314-925-1307 (fax)
    bstrode@archcitydefenders.org
    jlangum@archcitydefenders.org
    clewis@archcitydefenders.org
    khudson@archcitydefenders.org

/s/ Vonne L. Karraker
    **MANLEY, KARRAKER & KARRAKER, P.C..**
    Vonne L. Karraker (MBE #56335)
    110 S. Jefferson Street, P.O. Box 454
    Farmington, MO 63640
    573-756-6446
    573-756-5151 (fax)
    vonne@semoelderlaw.com

/s/ Vincent Colianni, II
    **COLIANNI & COLIANNI, L.L.C.**
    Vincent Colianni, II, #768VI.
    Colianni & Colianni, LLC
    4001 Village Run Rd.
    Wexford, PA 15090
    (340) 690-0629
    vinny@colianni.com

/s/ Kevin M. Carnie, Jr.
    **THE SIMON LAW FIRM, P.C.___**
    Kevin M. Carnie Jr. (MBE #60979MO)
    John M. Simon (MBE #68393MO)
    Patrick R. McPhail (MBE #70242MO)
    800 Market Street, Suite 1700
    St. Louis, Missouri  63101
    (314) 241-2929
    (314) 241-2029 /(fax)
    kcarnie@simonlawpc.com

jmsimon@simonlawpc.com
pmcphail@simonlawpc.com

*Attorneys for Plaintiffs*